**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: November 24, 2021
Date Decided: November 26, 2021

C. Barr Flinn, Esquire
Paul J. Loughman, Esquire
Alberto E. Chavez, Esquire
Young Conaway Stargatt &
  Taylor, LLP
100 North King Street
Wilmington, Delaware 19801

Gregory V. Varallo, Esquire
Andrew E. Blumberg, Esquire
Bernstein Litowitz Berger &
  Grossman LLP
500 Delaware Avenue, Suite 901
Wilmington, Delaware 19801

Raymond J. DiCamillo, Esquire
Kevin M. Gallagher, Esquire
Alberto E. Chavez, Esquire
Richards, Layton & Finger P.A.
920 North King Street
Wilmington, Delaware 19801

Christine M. Mackintosh, Esquire
Kimberly A. Evans, Esquire
Michael D. Bell, Esquire
Vivek Upadhya, Esquire
Grant & Eisenhofer P.A.
123 Justison Street
Wilmington, Delaware 19801

RE:   *In re BGC Partners, Inc. Derivative Litigation*,
      C.A. No. 2018-0722-LWW

Dear Counsel:

This letter decision addresses the defendants' Motion to Supplement the Record (the "Motion").[1]  The Motion asks that the court reopen the trial record to include documents about a purportedly comparable—but unrelated—transaction. After reviewing the parties' submissions regarding the Motion, I have determined that the Motion should be denied.  The limited probative value of the proffered

evidence is outweighed by the prejudice the plaintiffs would face if the record were supplemented.

## I.    BACKGROUND

In 2017, BGC Partners, Inc. purchased Berkeley Point Financial LLC from Cantor Commercial Real Estate Company, L.P. for $875 million.  Stockholders of BGC brought suit in this court, claiming that the controlling stockholder of BGC caused BGC to overpay for Berkeley Point because his economic interest in Berkeley Point exceeded his interest in BGC.  The claims survived a motion to dismiss and a motion for summary judgment.[2]

On October 7, 2021, the court entered a Pre-Trial Order that addressed evidentiary issues, including the scope of the trial record.[3]  Trial was held from October 11 to October 15, 2021.  The parties relied on 1,260 joint exhibits at trial. On October 19, 2021, the parties filed a final joint exhibit list.[4]

On November 5, 2021, the defendants provided the plaintiffs with an updated joint exhibit list that included four new exhibits.  Those documents—one press release and three equity analyst reports—relate to an October 20, 2021

---

[1] Dkt. 260.

[2] Dkts. 70, 216.

[3] Dkt. 251.

[4] Dkt. 251.

announcement that real estate brokerage firm Cushman & Wakefield plc ("CWK") was acquiring an interest in multifamily lender Greystone Investment. The plaintiffs did not consent to the additions, citing the Pre-Trial Order. The Motion was subsequently filed on November 22, 2021.

In their Motion, the defendants assert that the proposed additional exhibits support trial testimony that CWK might have been interested in purchasing Berkeley Point for more than $1 billion.[5] They contend that the documents also support testimony that BGC's purchase of 100% of Berkeley Point "was superior to a transaction that involved a partnership with Cantor."[6] The plaintiffs, in response, maintain that the documents are irrelevant because they concern a transaction unrelated to BGC's acquisition of Berkeley Point involving entities the defendants have never asserted are comparable.[7]

## II.    ANALYSIS

A motion to reopen and supplement the trial record is addressed to the sound discretion of this court.[8] The court's consideration of a motion to supplement

---

[5] Defs.' Mot. ¶ 2.

[6] *Id.*

[7] Pls.' Opp. ¶ 17 (Dkt. 261).

[8] *See Fitzgerald v. Cantor*, 2000 WL 128851, at *1 (Del. Ch. Jan. 10, 2000); *El Paso Nat. Gas Co. v. Amoco Prod. Co.*, 1992 WL 43925, at *10 n.15 (Del. Ch. Mar. 4, 1992) ("The decision to reopen the record is within the trial court's discretion.").

"turns on the interests of fairness and justice."[9]  "[T]he admission of late-submitted evidence is not favored."[10]

"There is no express rule governing motions to reopen the evidentiary record after the close of evidence, but before entry of a final judgment."[11]  This court has, however, considered several factors when exercising its discretion:

> 1) whether the evidence has come to the moving party's knowledge since the trial, 2) whether the exercise of reasonable diligence would have caused the moving party to discover the evidence for use at trial, 3) whether the evidence is so material and relevant that it will likely change the outcome, 4) whether the evidence is material and not merely cumulative, 5) whether the moving party has made a timely motion, 6) whether undue prejudice will inure to the nonmoving party and 7) considerations of judicial economy.[12]

The first, second, and fifth *Pope* factors are not in dispute.[13]  The first and second factors consider when the evidence sought to be added to the record became available.  The CWK/Greystone joint venture was not announced until five

---

[9] *Carlson v. Hallinan*, 925 A.2d 506, 520 (Del. Ch. 2006), *clarified by* 2006 WL 1510759 (Del. Ch. May 22, 2006); *see also Lola Cars Int'l Ltd. v. Krohn Racing, LLC*, 2010 WL 1818907, at *1 (Del. Ch. Apr. 23, 2010) (explaining that the court may grant such a motion where "doing so will serve the interests of fairness and substantial justice").

[10] *TR Invs., LLC v. Genger*, 2009 WL 4696062, at *12 n.36 (Del. Ch. Dec. 9, 2009); *see also Pope Invs. LLC v. Benda Pharm., Inc.*, 2010 WL 3075296, at *1 (Del. Ch. July 26, 2010).

[11] *Whittington v. Dragon Gp., LLC*, 2012 WL 3089861, at *3 (Del. Ch. July 20, 2012).

[12] *Pope Invs.*, 2010 WL 3075296, at *1 (quoting *Carlson*, 925 A.2d at 519-20).

[13] *See* Pls.' Opp. at 7 n.5 (stating that the "factors relating to Defendants' ability to discover the evidence before trial and the timeliness of the Motion are not in dispute").

days after trial concluded.[14]  And although the defendants waited 13 days after the plaintiffs declined (for a second time) to consent to supplementing the record before filing the Motion, it is not untimely given that post-trial briefs have not been submitted.

The third and fourth *Pope* factors consider whether the evidence is material and not cumulative, such that it could be outcome determinative.[15]  The defendants acknowledge that they "do not believe that the documents should change the outcome of the case."[16]  That statement alone weighs against granting the Motion.[17]

---

[14] Defs.' Mot. ¶ 8.

[15] *See Akorn, Inc. v. Fresenius Kabi AG*, 2018 WL 5044375, at *2 (Del. Ch. Oct. 17, 2018) (ORDER) (declining to separately list the fourth *Pope* factor because "whether the evidence is material and not merely cumulative" is "subsumed by whether the evidence 'is so material and relevant that it will likely change the outcome'" (quoting *Pope Invs.*, 2010 WL 3075296, at *1)).

[16] Defs.' Mot. ¶ 9.

[17] *See Pope Invs.*, 2010 WL 3075296, at *3 (finding that factor weighed against granting a motion to supplement where the information "while potentially probative, seems largely cumulative of information already in the record" and "unlikely to be so material and relevant as to change the outcome"); *Akorn*, 2018 WL 5044375, at *3 (explaining that the third *Pope* factor "counsel[ed] against granting the motion" where the information was not so material and relevant that it would "likely change the outcome of the trial"); *Sutherland v. Sutherland*, 2008 WL 571253, at *2 (Del. Ch. Feb. 14, 2008) (denying motion to supplement because, among other reasons, the evidence would not "materially affect resolution" of a pending dispositive motion).

Beyond that, the materiality and relevance of the evidence appears limited. The press release and analyst reports pertain to a transaction unrelated to the Berkeley Point acquisition. The Motion represents the first time the defendants have indicated that CWK may be comparable to BGC and that Greystone may be comparable to Berkeley Point.[18] The comparability of the recent CWK/Greystone transaction to BGC's acquisition of Berkeley Point in 2017 would be difficult to fairly assess without further evidence.

That reality leads to the sixth and seventh *Pope* factors, which concern prejudice to the plaintiffs and considerations of judicial economy. The plaintiffs were unable to examine the relevance of the CWK/Greystone joint venture at trial given the timing of that transaction. Extensive evidence, including expert testimony, was presented at trial about valuation issues regarding comparable transactions and companies. It would be unjust to—as the defendants suggest—require the plaintiffs to "argue the merits" of the new documents in post-trial briefing without further examination of that evidence.[19]

---

[18] *See* Defs.' Mot. ¶ 11; Pls.' Opp. ¶ 17.

[19] Defs.' Reply ¶ 6. The defendants suggest that the four documents they seek to add to the record are no different from documents added to the joint exhibit list but not introduced at trial. *Id.* ¶ 16. But the plaintiffs at least had the opportunity to elicit testimony on the joint exhibits. They would have no ability to inquire into the newly presented evidence concerning the CWK/Greystone joint venture.

If the court were to grant the Motion, additional discovery and an evidentiary hearing would be necessary to put the new evidence in context. Holding an evidentiary hearing—likely including fact and expert testimony—after the close of trial would burden the parties and the court.[20] And if another unrelated transaction with some arguable probative value was subsequently announced, the court could be faced with a motion to reopen the trial record yet again.[21]

## III. CONCLUSION

On balance, the *Pope* factors weigh against permitting the defendants to supplement the trial record. Considerations of justice and fairness require that the record remain closed. The Motion is therefore denied.

---

[20] *See Akorn*, 2018 WL 5044375, at \*3 (noting that before new evidence "could be considered fairly by the court," the non-movant "would have to be allowed to conduct discovery, then the court would have to hold a further hearing" with fact and expert testimony, which would burden the court); *Carlson*, 925 A.2d at 521-22 (explaining that a supplemental evidentiary hearing about an affidavit submitted after the close of evidence "would waste judicial resources"); *Fitzgerald*, 2000 WL 128851, at \*2 (stating that forcing the non-moving to "galvanize yet another major effort to gather evidence" would be "unfairly prejudicial" and would place a burden "on the parties and the Court" in the form of a "'mini-trial' to reconcile disputed evidence").

[21] The parties raise extensive arguments about whether the Pre-Trial Order permits supplementation of the record. *See, e.g.*, Pls.' Opp. ¶¶ 9-12; Defs.' Reply ¶¶ 1-4. Although the parties' negotiating history and ultimate agreement on the terms of the Pre-Trial Order were considered in assessing the Motion, I find the *Pope* factors conclusive.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

cc: All counsel of record (by *File & ServeXpress*)